UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CORDELROE MCMUTUARY,

                Plaintiff,

v.

KRIS TASKILA et al.,

                Defendants.

_____/

Case No. 2:24-cv-201

Honorable Maarten Vermaat

**<u>OPINION</u>**

       This is a civil rights action under 42 U.S.C. § 1983 brought by a state prisoner. The Court

has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all

matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No.

1, PageID.4.)

       This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial

review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131,

1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a

putative defendant's relationship to the proceedings.

       "An individual or entity named as a defendant is not obliged to engage in litigation unless

notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Further, under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21.

Applying this standard regarding joinder, the Court will drop Defendants Kris Taskila, Elizabeth Corrigan, Joe Hoffman, Joe Skytta, Joe Dessellier, B. Dessellier, and the Unknown Parties as misjoined. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice. With regard to remaining Defendants M. Skytta and Pynnonen, the Court will dismiss the complaint for failure to state a claim. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.    Factual Allegations

Plaintiff is currently incarcerated by the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events about which he complains, however, occurred when Plaintiff was incarcerated at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues the following AMF personnel in their official and personal capacities: Warden Kris Taskila, Deputy Warden Joe Hoffman, Health Unit Supervisor Elizabeth Corrigan, Joe Pynnonen, Joe Skytta, Joe Dessellier, Sergeant B. Dessellier, Corrections Officer M. Skytta, and Unknown Parties, referred to as "Move Team and all others."

Plaintiff alleges that on May 15, 2019, Defendant M. Skytta issued him a false misconduct ticket, which led Plaintiff to be placed in segregation. (Compl., ECF No. 1, PageID.6.) That evening, Defendant Pynnonen reviewed the misconduct ticket with Plaintiff. (*Id.*) Plaintiff told Defendant Pynnonen that he was being set up. (*Id.*) Defendant Pynnonen responded "saying that is what all y'all say." (*Id.*) Plaintiff replied, "who the f*** you talking to with that racist shit." (*Id.*) Defendant Pynnonen responded "that is not racist f***ing idiot. You [are going to] be here a long time running yo f***ing suck hole," before walking away. (*Id.*)

More than two years later, on August 17, 2021, Plaintiff was in general population when he came into contact with Defendant M. Skytta. (*Id.*) Plaintiff alleges that Defendant M. Skytta issued him another fictitious misconduct, which led to Plaintiff's placement in segregation again. (*Id.*) Plaintiff suggests that even though the two misconducts issued by Defendant M. Syktta were issued two years apart, they are "both [identical] in the description of the alleged incident." (*Id.*) Plaintiff's exhibits indicate that both tickets were issued for threatening behavior, a Class I violation. ECF Nos. 1-2, 1-3.) On August 21, 2021, Plaintiff submitted a grievance indicating that

4

"he felt unsafe due to the continued harassment and retaliation." (Compl., ECF No. 1, PageID.7.) The grievance "was rejected due to a mechanical error on the date." (*Id.*) Plaintiff also wrote to the Ombudsman to "find a reasonable resol[ution]." (*Id.*)

A year later, on August 17, 2022, Plaintiff was sent to segregation for "a failure to disburse." (*Id.*) Plaintiff alleges that he felt set up by Defendant Pynnonen because of the words they exchanged during Plaintiff's prior misconduct review. (*Id.*) Plaintiff decided to undergo a hunger strike to 'bring awareness to [the] administration for the continued harassment." (*Id.*)

On August 21, 2022, Plaintiff was still engaged in his hunger strike when Defendant M. Skytta "continued the harassment." (*Id.*) Plaintiff alleges that Defendant M. Skytta made disrespectful comments, stating, "Oh look who it is the f*** boy McMutuary. Welcome back bitch boy." (*Id.*) Plaintiff claims that Defendant M. Skytta continued the harassment during rounds, telling Plaintiff, "I will show you what happens to hunger strikes. I'm [going to] get you a dress to wear." (*Id.*, PageID.7–8.)

Twenty minutes later, non-party nurse practitioner Patricia Lewis conducted routine health care rounds and stopped at Plaintiff's cell, asking him if he was okay and if he wanted to hurt himself. (*Id.*, PageID.8.) Lewis told Plaintiff that "she was told [Plaintiff] wanted to kill [him]self." (*Id.*) Lewis then walked away. (*Id.*) Five minutes later, a move team was deployed to Plaintiff's cell. (*Id.*) Plaintiff was told to "strip down for a shakedown and to put on a[n] observation dress." (*Id.*) Plaintiff complied "and was taken to a suicide cell without incident." (*Id.*)

On August 23, 2022, Plaintiff was asleep when he was woken up with "loud commands to give a strip search and restrain." (*Id.*) Prior to hearing the commands, Plaintiff was gassed. (*Id.*) Plaintiff could not see because of the chemical agent, and he struggled to breathe. (*Id.*) Plaintiff

alleges that he "felt for the ground[,] laid completely flat on his stomach[, and had] his palms fac[ing] the ground." (*Id.*) Plaintiff then "scooted" towards the voices. (*Id.*)

Once Plaintiff reached the front of his cell, the cell door abruptly opened, and Plaintiff was "stampede[d] by" Defendants Dessellier and the Unknown Parties on the move team. (*Id.*, PageID.9.) Plaintiff was told to stop resisting; Plaintiff alleges that he was never resisting. (*Id.*) Plaintiff contends that he was "kneed in his ribs, struck in the head with a shield[,] and the restraints were put on [severely] tight cutting into [his] skin[,] causing lacerations and abras[]ions." (*Id.*) Plaintiff was placed in a restraint chair and carried up a flight of stairs, and he was then seen by a nurse who attempted to clean Plaintiff's head wound. (*Id.*)

Plaintiff "expressed that his eyes and face [were] on fire and he could not breath[e] or see." (*Id.*) He asked to be rinsed off but was denied. (*Id.*) Plaintiff was "pushed in a hallway and left alone." (*Id.*) About two minutes later, the move team members reappeared, and one of them stated, "now run your f***[ing] suck hole." (*Id.*) Plaintiff was denied the ability to decontaminate and instead was put back into the same cell "which was perfumed with gas." (*Id.*, PageID.10.) Plaintiff rinsed his eyes, sat down on the toilet, and faced the camera in the cell to "point[] out several injuries which were bleeding." (*Id.*)

Plaintiff submitted a medical kite asking that his injuries be assessed. (*Id.*) He also submitted a grievance. (*Id.*) On September 26, 2022, Defendant Corrigan "responded to Plaintiff['s] grievance and falsified her report." (*Id.*) Defendant Corrigan noted that Plaintiff never came out of his cell and that there was no mention of injuries. (*Id.*) Plaintiff appealed the rejection to Step II, and in his response, Defendant Taskila noted that Plaintiff "had a dime[-]size[d] wound above [his] right ear." (*Id.*) Plaintiff contends, however, that Defendant Taskila falsified his response by stating that he had reviewed the camera footage and "no excessive force was used."

6

(*Id.*, PageID.11.) Defendant Taskila also noted that Plaintiff had "only sustained one small injury." (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert various Eighth Amendment claims, constitutional claims relating to the handling of his grievances, and Fourteenth Amendment due process claims premised upon the issuance of the allegedly false misconducts. As relief, Plaintiff seeks compensatory damages ands "any other relief this [C]ourt deem[s] necessary." (*Id.*, PageID.4.)

## II.    Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel in this matter, arguing that this case is "very complex." (ECF No. 3, PageID.35.) Plaintiff indicates that he "did not prepare this complaint and [that he has] issues with literacy and comprehension." (*Id.*) Plaintiff also notes that he requires assistance in learning the names of the staff members who were part of the move team. (*Id.*)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 3) will, therefore, be denied.

### III.    Misjoinder

#### A.    Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily

has considerable discretion in applying Rules 18 and 20. The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first."").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant M. Skytta is the first Defendant mentioned in Plaintiff's factual allegations.[2] (*See* Compl., ECF No. 1, PageID.6.) Plaintiff alleges that on May 15, 2019, Defendant M. Skytta issued him a false misconduct ticket, leading to Plaintiff's placement in segregation. (*Id.*)

Considering first whether other Defendants are properly joined under Rule 20, the Court must determine whether one claim against each additional defendant is transactionally related to the claim against Defendant M. Skytta and involves a common question of law or fact. Reading Plaintiff's allegations indulgently, the Court concludes that Plaintiff intends to raise claims transactionally relating to the issuance of the May 15, 2019, misconduct ticket against Defendant Pynnonen, as Plaintiff alleges that Defendant Pynnonen is the individual who reviewed the misconduct ticket with Plaintiff. (*Id.*)

---

[2] The analysis of joinder must start somewhere. By accepting the factual allegations against the first-named Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

Turning to Rule 18, Plaintiff could join to his claims regarding the May 15, 2019, misconduct ticket against Defendants M. Skytta and Pynnonen any other claims against those Defendants. *See* Fed. R. Civ. P. 18(a) ("A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."). Plaintiff mentions Defendant M. Skytta in two other sections of his complaint. First, he alleges that Defendant M. Skytta issued him another false misconduct on August 17, 2021. (Compl., ECF No. 1, PageID.6.) He also contends that Defendant M. Skytta continuously harassed him on August 21, 2022. (*Id.*, PageID.7–8.) The Court will address those properly joined claims against Defendant M. Skytta.

With respect to Defendant Pynnonen, Plaintiff goes on to allege that on August 17, 2022, he was sent to segregation on a "failure to [disperse]" misconduct. (*Id.*, PageID.7.) Plaintiff alleges that he believes Defendant Pynnonen set him up because of the words he and Plaintiff exchanged during the "prior misconduct review." (*Id.*) The Court will address that properly joined claim against Defendant Pynnonen.

Plaintiff's allegations against Defendants M. Skytta and Pynnonen regarding the false misconducts, placement in segregation, and harassment are transactionally *unrelated* to Plaintiff's allegations against Defendants Taskila, Corrigan, Hoffman, Joe Skytta, Joe Dessellier, B. Dessellier, and the Unknown Parties. Moreover, there are no questions of law and fact that are common between Plaintiff's claims against Defendants M. Skytta and Pynnonen, on one hand, and Plaintiff's claims against Defendants Taskila, Corrigan, Hoffman, Joe Skytta, Joe Dessellier, B. Dessellier, and the Unknown Parties, on the other hand. For any of those additional defendants to be joined, Plaintiff's claims against that defendant must have a question of law or fact in common with the questions of law or fact that are at issue in Plaintiff's claims relating to his claims

concerning harassment, false misconducts, and placement in segregation against Defendants M. Skytta and Pynnonen. There is no such commonality apparent in Plaintiff's complaint.

Notably, Plaintiff fails to even mention Defendants Hoffman, Joe Skytta, and Joe Dessellier in the body of his complaint. Plaintiff's failure to set forth factual allegations concerning those Defendants automatically leads to a conclusion that there is no commonality between those defendants and Defendants M. Skytta and Pynnonen. Moreover, while Plaintiff's claims against Defendants Taskila, Corrigan, B. Dessellier, and the Unknown Parties concern a use of excessive force that allegedly occurred on August 23, 2022, and the response to that incident, Plaintiff sets forth no *facts* from which this Court could infer that the use of force is transactionally related to the alleged harassment of Plaintiff by Defendant M. Skytta on August 21, 2022, or the alleged false misconduct ticket issued by Defendant Pynnonen on August 17, 2022.

When conducting an initial review of a complaint, the Court must "accept all well-pleaded allegations in plaintiff's complaint as true and view facts in the light most favorable to plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Although Plaintiff contends that on August 21, 2022, Defendant M. Skytta told him that he would show Plaintiff what happened to hunger strikers and would get Plaintiff "a

dress to wear," nothing set forth in the complaint suggests that Defendant M. Skytta was the moving force behind Plaintiff's move to a suicide cell and the subsequent use of force against him.

Accordingly, Plaintiff's claims against Defendants M. Skytta and Pynnonen are transactionally related and involve common questions of law and fact. However, Plaintiff's claims against Defendants Taskila, Corrigan, Joe Hoffman, Joe Skytta, Joe Dessellier, B. Dessellier, and the Unknown Parties involve issues that are transactionally unrelated to, and do not share common questions of law or fact with, the claims against Defendants M. Skytta and Pynnonen. The fact that all of these events occurred while Plaintiff was incarcerated at AMF does not show that the claims arise out of the same transaction or occurrence. Accordingly, the Court concludes that Plaintiff's claims against Defendants M. Skytta and Pynnonen are properly joined, but that Plaintiff has improperly joined Defendants Taskila, Corrigan, Joe Hoffman, Joe Skytta, Joe Dessellier, B. Dessellier, and the Unknown Parties to this action.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendants Taskila, Corrigan, Joe Hoffman, Joe Skytta, Joe Dessellier, B. Dessellier, and the Unknown Parties to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a

district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's allegations against these Defendants relate to events that occurred in August, September, and October of 2022. (*See* Compl., ECF No. 1, PageID.8–11.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants. Therefore, Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Taskila, Corrigan, Joe Hoffman, Joe Skytta, Joe Dessellier, B. Dessellier, and the Unknown Parties

14

because they are misjoined. The Court will dismiss Plaintiff's claims against Taskila, Corrigan,

Joe Hoffman, Joe Skytta, Joe Dessellier, B. Dessellier, and the Unknown Parties without prejudice

to the institution of a new, separate lawsuit or lawsuits.[3]

## IV.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed

factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*;

*Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."). The court must determine whether the complaint

contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability

requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2));

---

[3] If Plaintiff wishes to proceed with his claims against one or more of the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at a particular correctional facility does mean that all claims arising out of these events are properly joined.

*see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The Court construes Plaintiff's allegations to raise Eighth Amendment claims premised upon harassment and placement in segregation, as well as Fourteenth Amendment claims premised upon the allegedly false misconduct tickets, against remaining Defendants M. Skytta and Pynnonen.

### A.    Claims Regarding May 15, 2019, Misconduct

As set forth above, Plaintiff contends that Defendant M. Skytta issued him a false misconduct on May 15, 2019, which led to Plaintiff's placement in segregation. (Compl., ECF No. 1, PageID.6.) That evening, Defendant Pynnonen reviewed the misconduct with Plaintiff and allegedly harassed Plaintiff during that review. (*Id.*)

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). As noted *supra*, for civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll*, 782 F.2d at 44; *Stafford*, 1999 WL 96990, at *1. Accrual of the claim for relief, however, is a question of federal law. *Collyer*, 98 F.3d at 220; *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when

the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.

A claim barred by the statute of limitations is subject to dismissal for failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a claim) (citing *Jones*, 549 U.S. at 215); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (when a complaint on its face is barred by the statute of limitations, it fails to state a claim).

Here, Plaintiff's claims regarding the May 15, 2019, misconduct ticket arose as of that date because Plaintiff had reason to know of the "harms" done to him at the time they occurred. Plaintiff, however, did not sign his complaint until November 26, 2024, more than two years past Michigan's three-year limit. Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002). Moreover, while the statute of limitations for prisoners is tolled for the period during which the prisoner is exhausting his available state administrative remedies, *see Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000), Plaintiff's complaint is devoid of any factual allegations suggesting he filed a grievance concerning the May 15, 2019, misconduct ticket. Even

17

if he had, and assuming that it took Plaintiff many months to exhaust his administrative remedies, Plaintiff's claims regarding the May 15, 2019, misconduct ticket would remain untimely.

For the foregoing reasons, Plaintiff's claims against Defendants M. Skytta and Pynnonen relating to the May 15, 2019, misconduct ticket are barred by the statute of limitations and, therefore, will be dismissed for failure to state a claim.[4]

### B.    Eighth Amendment Claims

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims against Defendants M. Skytta and Pynnonen. Specifically, the Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon his placement in segregation after the issuance of the allegedly false misconduct tickets on August 17, 2021, and August 17, 2022. The Court has also construed Plaintiff's complaint to assert an Eighth Amendment claim against Defendant M. Skytta premised upon his verbal harassment of Plaintiff on August 21, 2022.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations

---

[4] It is possible that Plaintiff's claim against Defendant M. Skytta regarding the August 17, 2021, misconduct ticket is also untimely. Plaintiff, however, alleges that he filed a grievance concerning that incident, and that he also submitted a complaint to the Ombudsman. (Compl., ECF No. 1, PageID.7.) He notes that the grievance was rejected "due to a mechanical error on the date." (*Id.*) Although Plaintiff does not suggest that he appealed the rejection, out of an abundance of caution, the Court will not dismiss this claims as untimely and instead will address it on the merits.

of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

### 1.    Placement in Segregation

As relevant to Plaintiff's claims regarding his placement in segregation, placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their

offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring Eighth Amendment claims for emotional or mental damages against Defendants M. Skytta and Pynnonen premised upon his placement in segregation because he does not allege any facts suggesting that the placement in segregation itself caused a physical injury. *See* 42 U.S.C. § 1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. Accordingly, any purported Eighth Amendment claims against Defendants M. Skytta and Pynnonen premised upon Plaintiff's placement in segregation will be dismissed.

### 2.    Verbal Harassment

Plaintiff alleges that on August 21, 2022, he was engaged in a peaceful protest via a hunger strike, and Defendant M. Skytta continued to verbally harass him during rounds. (*Id.*, PageID.7–8.) Although unprofessional, allegations of verbal harassment by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Additionally, allegations of verbal harassment do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits). Accordingly, any purported Eighth Amendment claims against Defendant M. Skytta premised upon verbal harassment will also be dismissed.

### C.    Fourteenth Amendment Due Process

The Court has also construed Plaintiff's complaint to assert Fourteenth Amendment due process claims against Defendants M. Skytta and Pynnonen premised upon the issuance of allegedly false misconduct tickets.

#### 1.    Procedural Due Process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

For example, in *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

Here, Plaintiff contends that Defendant M. Skytta issued him a Class II misconduct ticket for threatening behavior and that Defendant Pynnonen issued one for failure to disperse. Plaintiff does not indicate what, if any, sanctions he received as a result of these charges. Nevertheless, as explained below, Plaintiff cannot allege a deprivation that inevitably affected the duration of his sentence, and he has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484.

First, Plaintiff cannot allege that any misconduct conviction resulted in any loss of good-time credits, and therefore, he cannot demonstrate that the Due Process Clause's protections are triggered. The United States Court of Appeals for the Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[5] for prisoners, such as Plaintiff, convicted of crimes occurring after April 1, 1987. *See* MDOC Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=717304 (last visited Dec. 20, 2022). In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the Sixth Circuit determined that loss of disciplinary credits due to a class I misconduct conviction does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, the Sixth Circuit held that a misconduct citation in the Michigan prison system does not

---

[5] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x 909, 912 (6th Cir. 2009); *accord Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). In his complaint, Plaintiff fails to allege any facts to show that he was placed in segregation for an extended period of time. Further, if confinement in segregation does not implicate a protected liberty interest, it follows that any loss of privileges that Plaintiff incurred as a result of his misconduct convictions did not implicate such an interest. *Cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134

(2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).

Accordingly, for all of the foregoing reasons, Plaintiff fails to state Fourteenth Amendment procedural due process claims against Defendants M. Skytta and Pynnonen.

### 2.    Substantive Due Process

To the extent that Plaintiff intended to raise a substantive due process claim regarding Defendants' conduct, as explained below, he fails to state such a claim.

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Here, although Plaintiff vaguely suggests that Defendants M. Skytta and Pynnonen issued the allegedly false misconducts to set Plaintiff up, Plaintiff fails to set forth any factual allegations to support his conclusion that he was "set up." Plaintiff's allegations, therefore, fall short of demonstrating the sort of egregious conduct that would support a substantive

24

due process claim. Accordingly, any intended Fourteenth Amendment substantive due process claims will also be dismissed.

### **Conclusion**

The Court will deny Plaintiff's motion to appoint counsel. (ECF No. 3.) Having conducted the review required by the PLRA, the Court determines that Defendants Kris Taskila, Elizabeth Corrigan, Joe Hoffman, Joe Skytta, Joe Dessellier, B. Dessellier, and the Unknown Parties have been misjoined. They will be dropped from this action and Plaintiff's claims against them will be dismissed without prejudice. Plaintiff's claims against remaining Defendants M. Skytta and Pynnonen will be dismissed with prejudice, for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An order and judgment consistent with this opinion will be entered.


Dated:    April 2, 2025                    /s/ *Maarten Vermaat*
                                           Maarten Vermaat
                                           United States Magistrate Judge